IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER M. LANGDON,<br><br>Defendant. | Case No. 3:22-CR-30138-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This case is before the Court on Defendant's Motion to Revoke Detention Order or to Temporarily Release Defendant from Custody. (Doc. 58). Defendant Langdon asks the undersigned to revoke the magistrate judge's detention order, under 18 U.S.C. § 3145(b), or temporarily release him from custody, under 18 U.S.C. § 3142(i). Langdon primarily argues that his failures on bond directly stem from his addiction and that he would benefit more from a drug treatment program than detention. The Government opposes the motion. (Doc. 59).

Langdon is charged in a one-count Indictment as a felon in possession of a firearm. (Doc. 1). He was arrested on December 28, 2022, two weeks after the grand jury returned the Indictment. Magistrate Judge Mark A. Beatty released Langdon after the initial appearance and arraignment. (Docs. 1, 6, 7). Judge Beatty ordered Langdon released subject to certain conditions, which included a condition that Langdon "refrain from use or unlawful possession of a narcotic drug or other controlled substances," "submit to testing for prohibited substance if required by the U.S. Probation/Pretrial Services Office," and to

"participate in a program of inpatient or outpatient substance abuse therapy and counseling if deemed necessary." (Doc. 9, pp. 2-3). Langdon signed an unsecured $5,000 Appearance Bond before being released that day. (Doc. 10).

In April 2024, the Government filed a motion to revoke Langdon's bond. (Docs. 47, 48). On April 18, 2024, Judge Beatty held a bond revocation hearing, where he took the Government's motion under advisement and ordered Langdon temporarily detained. (Docs. 53, 54). Two weeks later, Judge Beatty granted the Government's motion and revoked Langdon's bond. (Doc. 55).

Langdon conceded to all the alleged conduct that violated the conditions of his release, except for one allegation that the Government later withdrew. As detailed in the Government's *Ex Parte* Motion to Revoke Bond (Doc. 48), Langdon's first violation occurred in July 2023, during a drug screening when he tested positive for cocaine. (Doc. 48, p. 2). At that time, the Government decided against recommending judicial intervention, and Langdon was referred for a substance abuse assessment. (*Id.*).

Over seven months later, Langdon failed to report to the Family Guidance Center in Springfield, Illinois, for required random drug testing. (*Id.* at pp. 2-3). Two of Langdon's subsequent urine samples tested positive for cocaine metabolite, with one also testing positive for marihuana. (*Id.* at pp. 3-4). Probation secured a placement for Langdon at a residential treatment facility, The Center, in East St. Louis, Illinois. (*Id.* at p. 3). Langdon failed to appear on time. (*Id.*). This prompted Probation to contact Langdon and his counsel. (*Id.*). Though three hours late, Langdon reported to The Center on March 25, 2024. (*Id.*). He stayed for a week until April 1, 2024, when he reported feeling sick and received permission to go to Memorial Hospital in Belleville, Illinois. (*Id.*). Upon discharge from the hospital, Langdon

never returned to The Center. (*Id.* at pp. 3-4). Evidently, Langdon did not realize he needed to return, even though staff at The Center claim to have informed Langdon that he needed to return with his hospital discharge paperwork. (*Id.*). On April 2, 2024, The Center discharged Langdon from its program for failure to return. (*Id.*).

From there, Langdon's relationship with Officer Bruce-Oldham, his Pretrial Services Officer, soured. According to a violation report by Officer Bruce-Oldham dated April 4, 2024, Langdon failed to submit his hospital discharge paperwork, refused to accept that he violated his bond conditions by failing to return to The Center, declined to work with her, and antagonized her by calling her "baby" and stating that she would "look stupid in court."[1]

At the bond revocation hearing, Judge Beatty heard a proffer of evidence and argument from the Government regarding circumstances surrounding Langdon's arrest in connection with the motion to revoke. (Docs. 55, 64). According to the Government, when law enforcement executed Langdon's recent arrest warrant, they conducted a protective sweep and witnessed controlled substances in plain view, which led them to obtain a search warrant for the residence. (*Id.*). As the Government averred, that search led to the seizure of 8.2 pounds of suspected marihuana, 18.2 grams of suspected cocaine, and boric acid, which the Government described as a "cutting agent" for cocaine. (*Id.*). Defense counsel emphasized that this proffer was not accompanied by any reports, exhibits, or other documents. (*Id.*). Judge Beatty took note of defense counsel's point. (*Id.*). Ultimately, given the circumstances and the established violative conduct, Judge Beatty did not find it necessary to rely upon the

---

[1] The Court received a copy of this report from the Probation Office. Both parties received this report prior to the revocation hearing before Judge Beatty. The Government referenced this report during the hearing, and Judge Beatty considered the report in deciding to revoke Langdon's bond.

proffered description of this uncharged criminal conduct to render a decision.[2]

Considering the motion along with the evidence and argument presented at the bond revocation hearing, Judge Beatty found that there was clear and convincing evidence that Langdon violated a condition of his release, as he conceded to such conduct. (Doc. 55). Judge Beatty also found that "the record before the Court, as a whole, leads to the inescapable conclusion that the Defendant is unlikely to abide by any condition or combination of conditions of release." (*Id.*). Judge Beatty emphasized that "the sequence of events is critical" in considering Langdon's request for another opportunity at residential treatment, given his untimely appearance at The Center, his departure after one week, and his false claim that he was not told to return. (*Id.*). Finally, Judge Beatty found that Langdon's "fraught relationship with his Pretrial Services Officer" bolstered the conclusion that Langdon "is unlikely to abide by conditions of release." (*Id.*). Judge Beatty granted the motion to revoke Langdon's bond and remanded him to the custody of the United States Marshal for pretrial detention.

Under 18 U.S.C. § 3145(b),

> If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

In reviewing a magistrate judge's release order, the district court "should not simply defer to the judgment of the magistrate, but reach its own independent conclusion." *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985). *See also United States v. Cisneros*, 328 F.3d 610, 616 n. 1 (10th

---

[2] Evaluating the record altogether, the Court agrees with Judge Beatty's conclusion regarding the Government's proffer at the revocation hearing—while troubling if substantiated, there is enough other evidence of violative conduct to warrant revocation of bond without considering this additional evidence.

Cir. 2003) ("The standard of review for the district court's review of a magistrate judge's detention or release order under § 3145(a) is de novo."); *United States v. Portes*, 786 F.2d 758, 761 (7th Cir. 1985).

The Court has carefully reviewed the transcript from Judge Beatty's hearing on April 18, 2024, and the entire record in the case. Langdon's conduct, contentious relationship with Pretrial Services, and refusal to meaningfully participate in treatment for his addiction persuades the undersigned that he is unlikely to abide by any condition or combination of conditions of release or benefit from another drug treatment program at this time.

There is clear and convincing evidence that Langdon violated the conditions of his release, as he admitted to such conduct. Furthermore, Pretrial Services Officers have made multiple efforts to work with Langdon, opting for treatment over detention, even when he failed multiple urinalysis tests. But those efforts were met with resistance and disrespect. Defense counsel earnestly advocated that addiction is better addressed in a treatment facility than a jail cell. The undersigned does not disagree. And certainly, this Court does not consider Langdon or his addiction past the point of no return. But for treatment to be successful, Langdon must be ready and willing to participate and possess the necessary responsibility and commitment to combat his addiction. As detailed above, Langdon has had three positive drug tests in the last year, he was reluctant to enter treatment, he abandoned treatment after one week, he refused to take responsibility for violating this condition of his release, he failed to provide hospital discharge paperwork to his Pretrial Services Officer, and he directly antagonized his Pretrial Services Officer when confronted. Based on Langdon's conduct on pretrial release thus far, the undersigned does not have confidence that another opportunity in residential treatment would be fruitful at this time.

Accordingly, following a *de novo* review of Judge Beatty's Order of Detention, the Court **DENIES** the Motion to Revoke the Order of Detention. (Doc. 58). Defendant Langdon shall remain in the custody of the United States Marshals Service pending trial or a favorable resolution of his motion to dismiss.

**IT IS SO ORDERED.**

DATED:   July 19, 2024

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**